STEARNS COAL & LUMBER CO. v. VAN WINKLE et al.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1915.)

No. 2550.

1. PARTIES ⚬⟳12—REPRESENTATIVE ACTION ON BEHALF OF ALL INTERESTED.
     If, after the expiration of a corporation's charter, its stockholders had legal capacity to recover in ejectment mineral and other rights in real estate owned by it, where the stockholders were numerous, and it was apparently impracticable to bring them all before the court, several of the stockholders could sue on behalf of all, under Civ. Code Prac. Ky. § 25, providing that if a question involve a common or general interest of many persons, or if the parties be numerous and it is impracticable to bring all of them before the court within a reasonable time, one or more may sue or defend for the benefit of all.
     [Ed. Note.—For other cases, see Parties, Cent. Dig. § 12; Dec. Dig. ⚬⟳12.]

2. PARTIES ⚬⟳10—REPRESENTATIVE ACTION ON BEHALF OF ALL INTERESTED.
     Under Civ. Code Prac. Ky. § 369, providing that judgment may be given for or against one or more of several parties, in a suit by stockholders of a corporation whose charter had expired to recover an interest in real property owned by it, it was immaterial that certain of the plaintiffs held only as administrators, where the recovery was purely representative, on behalf of the recovering plaintiffs and all other stockholders, vendees, heirs, and devisees of stockholders, as the recovery was in favor only of natural persons.
     [Ed. Note.—For other cases, see Parties, Cent. Dig. § 12; Dec. Dig. ⚬⟳10.]

3. PARTIES ⚬⟳10—REPRESENTATIVE ACTION ON BEHALF OF ALL INTERESTED.
     In such action it was immaterial whether one of the plaintiffs, who was the son of a former stockholder, had by an assignment of the stock certificate acquired his father's rights, the rights of his father having passed to his heirs, including such plaintiff, as his right of recovery would be the

same, being representative in character, whether or not he had acquired the rights of the other heirs.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 12; Dec. Dig. 10.]

**4. COURTS 367—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION.**

A decision of the highest court of a state that the legal title to corporate assets passes to stockholders after the lapse of two years from the termination of the corporate existence is binding upon the federal courts, in an action by stockholders to recover interests in real property owned by the corporation, as a decision upon a question affecting title to real estate.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. 367.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**5. CORPORATIONS 630—DISSOLUTION—TITLE TO PROPERTY.**

Under Ky. St. § 561, providing that, when any corporation expires by the terms of its articles of incorporation, it may thereafter continue to act for the purpose of closing up its business, but for no other purpose, and that it shall be the duty of the officers to settle up its affairs and business as speedily as possible, after the expiration of two years from the expiration of the corporation's charter, which by analogy to the statutes regulating the settlement of estates of deceased persons is held by the highest court of Kentucky to be a reasonable time for the winding up of the corporation's affairs, the title to interests in land owned by the corporation is in the stockholders as tenants in common, and they may sue for the recovery thereof from an adverse claimant, without the appointment of a receiver or trustee.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2482–2486; Dec. Dig. 630.]

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by John S. Van Winkle and others against the Stearns Coal & Lumber Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

J. N. Sharp, of Knoxville, Tenn., for plaintiff in error.

A. C. Van Winkle, of Louisville, Ky., for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. The Wayne County Beaty Oil Well Company was incorporated by act of the Legislature of Kentucky January 31, 1865. By later legislation its charter was made to expire January 31, 1895. At the time its charter expired it owned mineral rights and incidental timber and surface rights in five tracts of land in Wayne county, Ky., aggregating 1,000 acres. It owed no debts, and had carried on no mining operations on the land in question. Section 561 of the Kentucky Statutes provides that:

"When any corporation expires by the terms of the articles of incorporation * * * it may thereafter continue to act for the purpose of closing up its business, but for no other purpose; and it shall be the duty of the officers to

settle up its affairs and business as speedily as possible," with provision for publication of notice, requirement of payment of debts, etc.

No steps were taken to wind up the corporation, evidently because the stockholders were ignorant that the charter had expired, and some meetings of stockholders were had after January 31, 1895. In 1907 the corporation began suit in ejectment in a state court of Kentucky (for the recovery of the mineral and incidental rights referred to) against the Rock Creek Property Company (predecessor in interest of defendant here), which had obtained all rights in the land excepting the mineral and incidental rights mentioned, and was claiming those latter rights adversely to the Beaty Company. On the trial it developed that the Beaty Company's charter had expired, and accordingly the court dismissed the action. The present suit was begun in December, 1910, in a state court of Kentucky, by several stockholders of the Beaty Company, on behalf of themselves and all other stockholders, for the recovery of the mineral and incidental rights referred to. The suit was docketed on the equity side of the court. It was then removed to the court below by reason of diversity of citizenship of the parties. In the latter court it was first docketed on the equity side, and then transferred to the law side. Defendant denied that plaintiffs had any meritorious claim to the interests sued for, and pleaded adverse possession and the statute of limitations. The case was tried, by agreement of the parties, to the court without a jury, and judgment rendered for plaintiffs. This writ is brought to review the judgment.

[1-3] The pivotal question on which the validity of the judgment below must turn is whether the stockholders of the expired corporation had legal capacity to recover in ejectment the rights owned by the corporation at the time it expired. We say this because, first, when its charter expired the corporation owned the rights in question, and neither it nor its representatives have in any way conveyed or lost the right so held by the corporation, unless through adverse possession, and the latter defense is entirely unsustained; second, while plaintiffs comprise but a small proportion of the stockholders of the expired corporation, the stockholders are numerous, and it is apparently impracticable to bring them all before the court, and the questions involved are common to them all, and their rights thus rest upon the same foundation. The suit is therefore authorized by the express provisions of section 25 of the Code of Kentucky, cited in the margin.[1] See, also, Humphrey v. Burnside, 4 Bush (Ky.) 215; Payne v. McClure Lodge (Ky.) 115 S. W. 764; Penny v. Central Coal & Coke Co. (C. C. A. 8) 138 Fed. 769, 71 C. C. A. 135.

The recovery was purely representative; that is to say, "on behalf of [the recovering plaintiffs] and all other stockholders, vendees, heirs and devisees of stockholders of the Wayne County Beaty Oil Well Company." This being so, the point that certain of the plaintiffs held only as administrators is immaterial, because the recovery was per-

---

[1] "Sec. 25. If the question involve a common or general interest of many persons, or if the parties be numerous and it is impracticable to bring all of them before the court within a reasonable time, one or more may sue or defend for the benefit of all."

mitted only in favor of certain natural persons; and the Code (section 369) expressly provides that:

"Judgment may be given for or against one or more of several parties."

It is likewise unimportant, as applied to plaintiff Van Winkle, whether an assignment of stock certificate amounted to a legal conveyance of his father's rights as stockholder, for the father died before the corporate life terminated, and his widow became thereby the owner of the stock, and at her death all her property (including the stock in question) passed to certain heirs, including plaintiff Van Winkle. By virtue, thus, of the general terms of her will, whatever legal interest she held in the corporate assets passed, without reference to certificate of corporate stock, to her heirs, of whom plaintiff Van Winkle was one; and his right of recovery will be the same, being representative in character, whether or not the other heirs had by valid instrument conveyed to him.

[4] The right of the stockholders to maintain this action depends upon the nature of the title which they, as former stockholders, had in the corporate assets at the time this suit was begun. On the termination of the corporate life the stockholders were at least the equitable owners of its assets, including the real estate in question (Mormon Church v. United States, 136 U. S. 1, 47, 10 Sup. Ct. 792, 34 L. Ed. 478); but a merely equitable ownership would not have sustained an action in ejectment in the federal courts, where the distinction between legal and equitable actions and defenses is strictly maintained (Johnson v. Christian, 128 U. S. 374, 9 Sup. Ct. 87, 32 L. Ed. 412; Courtney v. Pradt [C. C. A. 6] 160 Fed. 561, 87 C. C. A. 463, except so far as modified by Act No. 278 of the Sixty-Third Congress (March 3, 1915), passed since this case was brought into this court. The controlling question, therefore, is whether at the time this suit was instituted the corporate stockholders held the legal title to the real interests in question. Judge Cochran, who heard the case below, was of opinion that under the law of Kentucky, as construed by the highest court of the state, the legal title to the corporate assets passed to the stockholders after the lapse of two years from the termination of the corporate existence (and thus before suit was begun), basing this conclusion upon the decision in Ewald Iron Co. v. Com., 140 Ky. 692, 131 S. W. 774, and 142 Ky. 465, 134 S. W. 481. Of course, if the decisions of the Kentucky Court of Appeals were rightly construed, the judgment below must be sustained; for the decisions of the highest court of a state upon questions affecting title to real estate within such state are binding upon the federal courts.

[5] The Ewald Case involved this situation: The Iron Company was a Kentucky corporation and a resident of Lyon county, Ky. Its charter expired November 5, 1905; Ewald, who resided in Jefferson county, Ky., was its sole stockholder; he took no steps to wind up the corporate affairs, but continued business in the corporate name until his death in July, 1909, after which the corporation was formally dissolved and its affairs wound up. On September 1, 1909, the Iron Company had on deposit in various banks in St. Louis, Mo., a large sum of money, representing the undistributed, accumulated earnings

221 F.—38

and profits of the company, all of which were carried on the latter's books as company assets. The sole question was to whom should this money be assessed for taxation, to the company, in Lyon county, or to Ewald's executor, in Jefferson county. The question was practically important. It was held that, when a corporation continues to carry on business after the expiration of its charter rights, the stockholders are simply doing business as partners, their acts not being those of the corporation, but of themselves, the money thereby made, being the property of the partners and not of the corporation; that section 561 of the Kentucky Statutes, to which we have before referred, required the closing of the corporate business within a reasonable time, and that by analogy to the statutes regulating the settlement of estates of deceased persons (Kentucky Statutes, §§ 3858, 3859) two years was a reasonable time for such closing of business; that the property held in the corporate name should be taxed in its name and as its property until November 5, 1907 (two years after the corporation expired), and after that date in the name of Ewald, the stockholder, and as his property.

A conclusion that the money should be taxed to Ewald after the expiration of the corporate life could have been rested upon the ground that he, as sole stockholder, held the entire equitable title; for section 4023 of the Kentucky Statutes makes it the duty of the holder of the equitable title (whether in possession or not), as between himself and the holder of the legal title, to list the property and pay the taxes thereon. But neither section 4023 nor the rule it declares was referred to; and, as Judge Cochran points out, on the theory that Ewald became the equitable owner of all the Iron Company's property after November 5, 1905, the money in the St. Louis banks should have been listed to him for the years 1907, and 1908, as well as for the years 1909 and 1910. The distinction between the legal and equitable title does not appear to have been in the mind of the writer of the opinion. The ground of the decision seems to have been that after two years from the expiration of the corporation's life it ceased to exist for all purposes, and, ipso facto, its property passed to Ewald. Judge Cochran was impressed by the reasoning and language of the court that:

"The presupposition of the conclusion reached is that up until the expiration of two years from the end of its term, at least in a case of that sort, this being such a case, the title, both legal and equitable, to the property of the corporation, is in it, and thereafter in the stockholders."

This construction of the Ewald Case is not without force.

The adoption of the analogy to estates of deceased persons has, too, some pertinency; for indisputably the heirs and distributees hold the legal title to the property of the deceased, in the absence of administration, after the lapse of the statutory period for settlement of the estate. The holding that section 561, which relates to the settlement of affairs of defunct corporations, was affected by sections 3858, 3859, which relate to the settlement of estates of deceased persons, was not obiter; and accepting, as we must, this construction, a conclusion that the stockholders held the legal title after the lapse of the statu-

tory period for settlement of corporate affairs would seem to follow logically.

It has frequently been asserted, either expressly or impliedly, that upon the dissolution of a private business corporation its property, after payment of debts, equitably belongs to the stockholders. But this we apprehend means no more than that the corporate assets are impressed with a trust in favor of creditors and stockholders; or, otherwise stated, that the stockholders own the assets subject to a trust in favor of creditors, and subject to such adjustment between stockholders, on account of subscriptions or otherwise, as may be necessary. The jurisdiction of equity for the administration of such trust relations has been frequently asserted, as in the early case of Bacon v. Robertson, 18 How. 480, 15 L. Ed. 499, which involved a demurrer to a bill filed by stockholders of a corporation against the trustee in possession of its assets under a judgment of forfeiture in quo warranto, in which case the Supreme Court, rejecting the ancient doctrine (which was never recognized in this country, 2 Cook on Corporations [6th Ed.] § 641), that on the dissolution of a corporation its property reverted to its vendors, held that the latter had no equity superior to creditors or stockholders. In that case the trustee was in actual possession, and equity had jurisdiction to administer the trust.

As expressed in Blake v. McClung, 172 U. S. 239, 254, 19 Sup. Ct. 165, 171 (43 L. Ed. 432):

"It is an established rule of equity that when a corporation becomes insolvent it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors."

And in Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 383, 14 Sup. Ct. 127, 130 (37 L. Ed. 1113), it was said, speaking of the property of an insolvent corporation:

"Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder."

But the Supreme Court has not held, so far as we have seen, that stockholders have no legal title to the assets of an expired corporation where no trustee has been appointed, and after debts of the corporation have all been paid and all equities between stockholders adjusted. True, in Mormon Church v. United States, 136 U. S. 1, 47, 10 Sup. Ct. 792, 34 L. Ed. 478, Mr. Justice Bradley said that the modern doctrine is that, when a private business corporation is dissolved, "its property, after payment of its debts, equitably belongs to its stockholders"; but the case before the court involved no distinction of the nature existing here. On the other hand, in Pewabic Mining Co. v. Mason, 145 U. S. 349, 356, 12 Sup. Ct. 887, 36 L. Ed. 732, Mr. Justice Brewer said that on the termination of the mining company its property "belonged to the different stockholders as tenants in common." See, to the same effect, Opinion of the Justices, 66 N. H. 639, 33 Atl. 1076. The Pewabic

Case recognized the right of stockholders to agree among themselves upon the disposition and transfer of the assets.

The relations of stockholders in an expired corporation are "analogous to the relations of partners." Mason v. Pewabic Mining Co., 66 Fed. 391, 395, 13 C. C. A. 532 (C. C. A. 6); Mason v. Pewabic Mining Co., 133 U. S. 59, 10 Sup. Ct. 224, 33 L. Ed. 524; Opinion of the Justices, supra, 66 N. H. 639, 33 Atl. 1076. The rule by which partnership real estate is regarded in equity as personalty is merely for the purpose of subjecting it to the payment of debts and the adjustment of balances between partners (Riddle v. Whitehill, 135 U. S. 635, 10 Sup. Ct. 924, 34 L. Ed. 282); but where there are no debts or the debts have all been paid, the partners have the right to personally dispose of or divide the lands (Godfrey v. White, 43 Mich. 171, 179, 5 N. W. 243; Lovewell v. Schoolfield [C. C. A. 6] 217 Fed. 689, 703, 133 C. C. A. 449).

Statutes for winding up the affairs of dissolved corporations are "embodiments of equitable doctrines, and afford legal remedy where before there was none." Mason v. Pewabic Mining Co., 66 Fed. 395, 13 C. C. A. 532. Administration under such statutes takes the place of administration in equity. Had the officers of the Oil Well Company taken the statutory proceedings for liquidation of the affairs of the corporation, it would, we think, have been entirely competent, after the payment of debts or after ascertainment that there were none, for the stockholders to divide or dispose of the real estate on the basis of legal ownership as tenants in common. And since, as impliedly held by the Court of Appeals of Kentucky in the Ewald Case, the time for invoking the winding up statute had passed (it is at least open to question whether such action was not otherwise barred by limitation),[2] and in fact, as affirmatively appears, there were no corporate debts (and so far as suggested no equities as between stockholders), we see no escape from the conclusion that the stockholders owned the legal title to the land in question as tenants in common. Express authority is found for this conclusion in Baldwin v. Johnson, 95 Tex. 85, 65 S. W. 171, and Gasque v. Ball, 65 Fla. 383, 60 South. 215. Implied authority is found in Taylor v. Investment Co., 75 Wash. 490, 496, 135 Pac. 240, and in Opinion of the Justices, 66 N. H. 629, 639, 33 Atl. 1076. For the purposes of mere recovery of the corporate property from an adversary party there was no imperative necessity for the appointment of a receiver or trustee to act as representative plaintiff. The suit was in fact representative. We therefore think that, whether or not the Ewald Case should be given the broad construction accorded it below, the District Court did not err in holding the plaintiff stockholders entitled to maintain the action of ejectment.

Of course, equity still has jurisdiction, notwithstanding the judgment in question, to make partition between stockholders by sale of the property, if necessary for the purpose (Mason v. Pewabic Mining Co., 133 U. S. 50, 63, 10 Sup. Ct. 224, 33 L. Ed. 524; Briges v. Sperry, 95 U. S. 401, 405, 24 L. Ed. 390); for the judgment determines only

2 Kentucky Statutes, § 2522; Allen v. Forman, 96 Ky. 313, 28 S. W. 497.

that the stockholders, all together, are entitled to recover from defendant the interests in question, with damages incidental to the detention.

The judgment of the District Court is affirmed, with costs.